IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SYLVIA ESPREE,                        §
                                      §
         Plaintiff,                   §
                                      §
v.                                    §    CIVIL ACTION NO. H-06-2888
                                      §
MICHAEL J. ASTRUE,[1]                 §
COMMISSIONER OF THE                   §
SOCIAL SECURITY ADMINISTRATION,       §
                                      §
         Defendant.                   §

## MEMORANDUM OPINION

Pending before the court[2] is Defendant's motion for summary judgment (Docket Entry No. 13). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion for summary judgment.

### I.  Case Background

Plaintiff Sylvia Espree ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for

---

[1]    Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is automatically substituted for his predecessor, Jo Anne B. Barnhart, as defendant Commissioner of the Social Security Administration in this action.

[2]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 9-10, 12.

supplemental security income benefits under Title XVI of the Social Security Act ("the Act").

## A.  Procedural History

Plaintiff filed for disability benefits on February 23, 2004, claiming an inability to work since February 21, 2004, as a result of high blood pressure, high cholesterol, and sleep apnea.[3]  After the application was denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[4]  The ALJ granted Plaintiff's request and conducted a hearing in Baker, Texas, on October 12, 2005.[5]  After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on January 27, 2006.[6]  The ALJ found Plaintiff was not disabled at any time during the period covered by her application, and Plaintiff appealed that decision on February 3, 2006.[7]

On July 17, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's

---

[3]     Transcript of the Administrative Proceedings ("Tr.") 80-87, 90.

[4]     See Tr. 49-63.

[5]     Tr. 75-79, 523.

[6]     See Tr. 39-43.

[7]     Tr. 34-35.

decision the final decision of the Commissioner.[8]  Plaintiff filed this timely civil action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's unfavorable decision.

**B.  Factual History**

1.  Plaintiff's Age, Education, and Work Experience

Plaintiff was born on August 12, 1965, and was forty years old at the date of the ALJ's decision.[9]   She allegedly became unable to work on February 21, 2004.[10]  She had a ninth grade education with no further job, trade, or vocational training.[11]  Prior to the onset of her alleged disability, Plaintiff was last employed for approximately two months as a fast food worker and for approximately two months as a home health care worker, both in 1995.[12]

2.  Plaintiff's Testimony

At the hearing, the ALJ solicited testimony from Plaintiff and a vocational expert ("VE").[13]  Plaintiff testified to suffering from high blood pressure, congestive heart failure (including chest pains and shortness of breath), lack of energy and stamina, sleep

---

[8]   Tr. 5-8.

[9]   Tr. 81, 528.

[10]   Tr. 81.

[11]   Tr. 96.

[12]   Tr. 91, 532, 540.

[13]   See Tr. 528-46.

apnea, depression, anxiety, and borderline diabetes.[14]  Plaintiff
explained that she had not worked since 1995 because of heart
problems, high blood pressure, extreme fatigue, and the need to
care for her asthmatic son.[15]

In response to her attorney's questions, Plaintiff confirmed
that she was hospitalized in 2004 due to her heart problems.[16]  She
also mentioned a diagnosis of sleep apnea in 1999 and her use of a
continuous positive airway pressure ("CPAP") machine to minimize
its effects.[17]  She experienced chest pain when she walked or
exerted herself and occasionally when she did nothing.[18]  She
believed that her heart condition was getting worse because she
experienced chest tightness and fatigue.[19]  She also related that
she occasionally suffered from depression but refused to take
medication for the condition because of the potential side
effects.[20]  She confirmed that in September 2005 her blood pressure
was 151/76 in spite of taking blood pressure medication.[21]
Plaintiff testified that her treating physician told her she was

---

[14]    Tr. 529-30, 537-38, 540.

[15]    Tr. 530, 540.

[16]    Tr. 531.

[17]    Tr. 531, 534.

[18]    Tr. 535.

[19]    Tr. 536.

[20]    Tr. 537.

[21]    Tr. 539.

borderline diabetic, and, at the time of the ALJ hearing, Plaintiff was awaiting her blood work results before receiving a definitive diagnosis.[22]  Throughout the years preceding the ALJ hearing, she reported having "a whole lot of shortness of breath."[23]

At the time of the hearing, Plaintiff stated that she sometimes drove to her church, regularly went door-to-door in her community to talk about her faith twice a week, and sometimes shopped for groceries and pushed the cart.[24]  She did not do any laundry, cooking, or household cleaning.[25]  She reported taking eleven medications, including Nitroglycerine, and testified that they caused fatigue, drowsiness, severe headaches, and chest pains that forced her to lie down "a couple of hours" each day.[26]

At the conclusion of the hearing, Plaintiff's attorney highlighted to the ALJ that his client had been diagnosed with a Class III heart ejection fraction[27] of thirty-nine percent[28], that

---

[22]   Tr. 540.

[23]   Tr. 540.

[24]   See Tr. 528.

[25]   Tr. 529.

[26]   See Tr. 538-40.

[27]   An ejection fraction is "the proportion of blood that is ejected during each ventricular contraction compared with the total ventricular volume." Mosby's Pocket Dictionary of Medicine, Nursing, & Allied Health 306 (1st ed. 1990).

[28]   The New York Heart Association publishes a classification system for patients with cardiac disease.  Class III is composed of "[p]atients with cardiac disease resulting in marked limitation of physical activity.  They are comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain."  See American Heart Association, 1994 Revisions to

these classifications were embedded in the cardiac Listings,[29] and that "some of the cases even indicate that with a Class III classification . . . no individual should be able to work."[30]

### 3.  Medical Records

Plaintiff's medical records appear generally to support her testimony, although some discrepancies exist relating to the severity of her complaints.

Plaintiff's medical record reflects that she has a history of depression, insomnia, chronic low back pain, and hypertension dating back to January 24, 1996.[31]  A year later, on January 25, 1997, Plaintiff visited her doctor with complaints of headache and chest pain radiating to her right arm.[32]  On June 16, 1997, she was diagnosed with obesity and hypertension, but a stress test on August 1, 1997, was normal.[33]  On December 8, 1997, she was again diagnosed with depression.[34]  On February 11, 1998, Plaintiff complained of daily throbbing headaches that were not alleviated by

---

Classification of Functional Capacity and Objective Assessment of Patients With Diseases of the Heart (2007), http://www.americanheart.org/print_presenter.jhtml?identifier=1712.

[29]    The "Listings" refers to impairments listed in Appendix 1 of the Social Security Act regulations.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

[30]    Tr. 547.

[31]    See Tr. 305, 313, 320.

[32]    Tr. 302.

[33]    Tr. 96-97.

[34]    Tr. 88.

sleep.[35]   On September 15, 1998, a blood pressure check indicated that her hypertension was moderately controlled.[36]   On October 6, 1998, she began using a CPAP machine for sleep apnea.[37]   On February 2, 1999, Plaintiff was diagnosed with sleep apnea and "well-controlled" hypertension.[38]   On February 8, 2001, she was again diagnosed with sleep apnea.[39]   On March 30, 2001, and July 15, 2001, the records indicate further migraine complaints.[40]   On August 21, 2001, and June 22, 2002, Plaintiff visited the emergency room with chest pains and was diagnosed with costochondritis[41] and depression.[42]   In January, September, and December 2003, she was diagnosed with "poorly-controlled" hypertension.[43]

On February 16, 2004, she again entered the emergency room with chest "tightness" and shortness of breath.[44]   A chest x-ray at that time suggested pulmonary vascular congestion with mild edema

---

[35]     Tr. 283.

[36]     Tr. 274.

[37]     See Tr. 321-361.

[38]     Tr. 268.

[39]     Tr. 232.

[40]     Tr. 229, 231.

[41]     A condition related to "inflammation of the rib cartilages."  2-CH Attorneys' Dictionary of Medicine 345 (LEXIS).

[42]     Tr. 219, 228.

[43]     Tr. 206, 210-11.

[44]     Tr. 149.

and congestive heart failure.[45]  Two days later, a heart stress test found a blood ejection fraction of thirty-nine percent from the left ventrical, but no myocardial ischemia and only mild to moderate left ventricular dilation were discovered at this time.[46] A chest x-ray revealed pulmonary vascular congestion with mild edema.[47]  Plaintiff's right coronary artery had only mild plaqueing that was "insignificantly diseased;" no corrective surgery was undertaken.[48]   She was discharged on February 21, 2004, with diagnoses of noncardiac chest pain, hyperlipidemia,[49] obstructive sleep apnea, and hypertension.[50]  Upon release, she was told to take all of her medications and to continue using her CPAP machine for her sleep apnea, but no other restrictions were placed on her activities.[51]

On May 15, 2004, Plaintiff's physician stated that the claimant may suffer from vasospasm.[52]  Plaintiff at this time was

---

[45]    Tr. 157.

[46]    Tr. 157.

[47]    Tr. 159.

[48]    See Tr. 169-70.

[49]    A condition related to the "presence of high levels or concentrations of lipids (fats) in the blood."  3-H Attorneys' Dictionary of Medicine 5176 (LEXIS).

[50]    Tr. 149-50.

[51]    Tr. 150.

[52]    See Tr. 180, 182, 385.  Vasospasm is a coronary artery condition creating "spasmodic contraction of the arteries."  2-CH Attorneys' Dictionary of Medicine 5935 (LEXIS).

able to walk on her own with a steady gait.[53]  On May 20, 2004, a medical consultant reviewing Plaintiff's medical history concluded that Plaintiff could:  1)  occasionally lift and/or carry fifty pounds; 2) frequently lift and/or carry twenty-five pounds; 3) stand and/or walk with normal breaks for about six hours in an eight-hour workday; 4) sit with normal breaks for a total of about six hours in an eight-hour workday; and 5) push and/or pull in an unlimited manner.[54]  No manipulative, communicative, or postural limitations were established.[55]  The reviewing medical consultant wrote that Plaintiff's "allegations are not fully supported by medical evidence of record."[56]

On June 2, 2004, Plaintiff's doctor's recommendations were that she limit her salt intake, walk five minutes a day, and take her medication.[57]  On June 30, 2004, Plaintiff was found to have an ejection fraction of sixty to sixty-four percent.[58]  Plaintiff's complaints of chest pain when walking continued in September 2004, and her physician gave her a Class II-III heart rating[59] and a

---

[53]    See Tr. 180, 385.

[54]    Tr. 194.

[55]    Tr. 195.

[56]    Tr. 198.

[57]    Tr. 178.

[58]    Tr. 176.

[59]    Class II is reserved for "[p]atients with cardiac disease resulting in slight limitation of physical activity.  They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal

diagnosis of hypertension that had been "uncontrolled" for ten years.[60]   Plaintiff's medical notes at this time continued to reflect normal coronaries and an improved ejection fraction.[61]   The records also indicated that Plaintiff's activities were mildly restricted, possibly because of her obesity, and that she had "possible" depression but refused anti-depressant medication.[62]   In May 2005, she was diagnosed with anxiety and congestive heart failure, and she continued to complain of pain, soreness, and tightness in her chest, but chest x-rays showed clear lungs and no acute pulmonary disease.[63]   She continued to be "ambulatory in a stable condition."[64]   In August 2005, Plaintiff was referred to an obesity clinic.[65]   Plaintiff's records establish that she was approximately five feet, four inches tall and typically weighed between 215 and 224 pounds.[66]   Her chest pain complaints continued in September 2005.[67]

_____

pain."   See American Heart Association, 1994 Revisions to Classification of Functional Capacity and Objective Assessment of Patients With Diseases of the Heart (2007), http://www.americanheart.org/print_presenter.jhtml?identifier=1712.

[60]     See Tr. 202, 375.

[61]     Tr. 375.

[62]     Tr. 489.

[63]     Tr. 381, 490, 492.

[64]     Tr. 494.

[65]     Tr. 489.

[66]     Tr. 169, 188, 202-03, 206, 489.

[67]     Tr. 489.

### 4.   Vocational Expert Testimony

After reviewing the file and listening to Plaintiff's testimony, the VE, Wallace Stanfill, opined that Plaintiff's prior work experience were not relevant because the two jobs were fairly short in duration.[68]

The VE was asked by the ALJ if a hypothetical individual of Plaintiff's age, educational background, and work history could perform certain jobs assuming that the individual would also be restricted to: a) lifting and/or carrying no more than ten pounds frequently and twenty pounds occasionally, and b) sitting approximately six hours in an eight hour day and standing and/or walking with normal breaks for approximately six hours in an eight-hour day.[69]

Presented with this hypothetical, the VE opined that such an individual would be able to perform Plaintiff's past work as a fast food worker as well as the full range of light unskilled jobs.[70] According to the VE, the individual could work as a child attendant, small products assembler, or an office cleaner, and each of these positions was available in significant numbers in both the regional and national economies.[71]

---

[68]     Tr. 543.

[69]     Tr. 543-544.

[70]     Tr. 544-45.

[71]     Tr. 544-45.

In response to a followup question posed by Plaintiff's attorney, the VE testified that an individual who required the ability to "lie down two to three hours a day during a normal eight hour day because of the medication she is taking" would be unable to perform any jobs in the national economy.[72]   The VE also stated that an individual who was required to lie down and rest for thirty-to-forty minutes after taking Nitroglycerin medication five times a month on the job during a normal eight-hour work day would similarly be unable to maintain employment.[73]

## II.   Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) substantial evidence in the record supports the decision, and 2) the ALJ applied proper legal standards in evaluating the evidence.   <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002); <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).

### A.   Substantial Evidence

"Substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion" and is "something more than a scintilla but less than a preponderance."   <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000).   The Commissioner has the responsibility of deciding any

---

[72]   Tr. 545-46.

[73]   Tr. 546.

conflict in the evidence.  <u>Id.</u>  The findings of fact contained in the Commissioner's decision are conclusive if they are supported by substantial record evidence, and this court must affirm.  42 U.S.C. § 405(g); <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990).

The court should overturn the Commissioner's decision only if no credible evidentiary choices of medical findings exist to support it.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  <u>Brown</u>, 192 F.3d at 496.  In other words, the court must defer to the decision of the Commissioner as much as is possible without making its review meaningless.  <u>Id.</u>

**B.  Legal Standard**

A claimant seeking disability benefits bears the ultimate burden of proving she is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991).  Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by

"medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5ᵗʰ Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5ᵗʰ Cir. 1994); see also 20 C.F.R. § 404.1520.  By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5ᵗʰ Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy his burden either by relying upon the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence.  Fraga v. Bowen, 810 F.2d 1296, 1304 (5ᵗʰ Cir. 1987).  If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to

14

prove she cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5ᵗʰ Cir. 1991).  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

### III.  Analysis

#### A.  ALJ's Findings

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged date of onset, and that Plaintiff did have a combination of impairments that was severe.[74]  The ALJ found that Plaintiff's impairments, singly or in combination, did not meet or equal any of the Listings.[75]  Plaintiff retained a residual functional capacity ("RFC"), according to the ALJ, that allowed her to perform medium work.[76]  The ALJ found that Plaintiff could perform her past work of fast food worker, and that other jobs existed in the national economy that Plaintiff could perform with her RFC.[77]

The ALJ also found Plaintiff's allegations of total disability not fully credible.[78]  According to the ALJ, Plaintiff was active outside of her home, and that she had only a slight loss of

---

[74]    See Tr. 40-42, 43.

[75]    Tr. 41, 43.

[76]    Tr. 42-43.

[77]    Tr. 42-43.

[78]    Tr. 41.

mobility, strength, and endurance due to her combined physical disorders.[79]  He found that her medications were not documented as causing any major side effects.[80]  The ALJ also found that Plaintiff had been told to walk and lose weight but she had not done so; that she attended church and witnessed her faith in the community; and that she grocery shopped and pushed the cart.[81]   The ALJ also concluded that Plaintiff's ejection fraction of thirty-nine percent in February 2004 was an isolated event in light of the medical record as a whole and especially in light of an examination in June 2004 evidencing a greatly improved ejection fraction of sixty to sixty-four percent.[82]

### B.  Plaintiff's Arguments

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.   Although Plaintiff made no arguments before this court by way of a summary judgment motion, the court has thoroughly reviewed the transcript, including the arguments that Plaintiff presented to the Social Security Appeals Council when she requested review of the ALJ's decision.[83]

### 1. Limitations

---

[79]     Tr. 41.

[80]     Tr. 41.

[81]     Tr. 41.

[82]     Tr. 41-42.

[83]     Tr. 10-27.

Plaintiff argued that the ALJ failed to include all of her limitations when determining her RFC.[84]  Specifically, Plaintiff contended that the ALJ committed error in finding that Plaintiff's complaints of depression and sleep apnea were not severe impairments.[85]

The ALJ is granted the authority to determine which disabilities and limitations are supported by the evidence, and the court should overturn the Commissioner's determinations "only where there is a conspicuous absence of credible choices or no contrary medical evidence."  Johnson, 864 F.2d at 343-344 (internal quotation marks omitted); see also Brown, 192 F.3d at 496. Furthermore, the ALJ's recognition of limitations must be supported by substantial evidence.  See Johnson, 864 F.2d at 343-344.

In this case, the ALJ's findings recognized that Plaintiff suffered from hypertension, congestive heart failure, obesity, depression, and sleep apnea.[86]  He determined that the first three impairments were severe but that the last two did not create more than a slight limitation upon Plaintiff's ability to perform basic work-related activities.[87]  Plaintiff had no significant record of

---

[84]    Tr. 13.

[85]    Tr. 13.

[86]    Tr. 40-41.

[87]    Tr. 40-41.

mental health care and has refused medication for depression.[88] She has not alleged any restrictions related to her depression, such as impairment of daily activities, social functioning, or concentration.[89]

Plaintiff also undisputedly had sleep apnea,[90] but she has had a CPAP machine since 1998 which, when used, eliminates or greatly reduces the effects of this condition, thereby imposing no limitations on her ability to work.[91] The record holds no indication that Plaintiff continued to suffer from problems directly related to her sleep apnea when she used the CPAP. Because treatable medical conditions that can reasonably be remedied, thus restoring one's ability to work, are not disabling, the court finds that the ALJ's decision concerning Plaintiff's limitations should not be overturned. See Taylor v. Bowen, 782 F.2d 1294, 1298 (5th Cir. 1986); 20 C.F.R.  416.930(a); see also Hilkemeyer v. Barnhart, 380 F.3d 441, 446 (8th Cir. 2004) (sleep apnea was ameliorated by use of a CPAP machine).

2.  Obesity

The ALJ acknowledged that Plaintiff was obese when he found, at step two of the analysis that Plaintiff's obesity constituted a

---

[88]    Tr. 40.

[89]    Tr. 40-41.

[90]    Tr. 42.

[91]    See Tr. 42.

severe impairment.[92]  This finding satisfied the portion of Social
Security Regulation 02-01p that requires the Commissioner to
consider obesity in determining whether a claimant had a medically
determinable impairment that was severe.[93]  See SSR 02-01p, 2002 SSR
LEXIS 1.  Although Plaintiff mentioned her obesity when explicitly
asked by her lawyer, there was no reference relating to how this
affected either her daily activities or her alleged disability.[94]

Considering the foregoing, Plaintiff did not carry her burden
to produce evidence that her weight resulted in any impairment or
limitation attributed to obesity beyond those that were otherwise
considered by the ALJ in his analysis of Plaintiff's RFC.  The
court finds, therefore, that the ALJ properly took into account
Plaintiff's weight in rendering his decision, even though the
decision failed to mention explicitly the impact of Plaintiff's
obesity on her RFC.  Plaintiff gave the ALJ no reason to consider
additional, weight-related, functional limitations when making his
determination.

### 3.  Credibility Assessment

Plaintiff also argued that the ALJ improperly rejected
Plaintiff's credibility based on her failure to lose weight.  Where

---

[92]    Tr. 41.

[93]    Although SSRs are not binding on the court, they may provide the
court with guidance on the proper legal standards.  Myers v. Apfel, 238 F.3d 617,
620 (5th Cir. 2001).

[94]    See Tr. 534-35.

treatment would remedy an impairment and a claimant fails to follow prescribed treatment without good reason, the claimant will not be found disabled.  <u>Johnson v. Sullivan</u>, 894 F.2d 683, 685 n.4 (5th Cir. 1990); 20 C.F.R. 404.1530(a), (b); 20 C.F.R. 416.930(b). Here, the record shows that Plaintiff failed to comply with her treating physician's recommendation to lose weight.[95]   When Plaintiff was asked at the ALJ hearing about the steps she had taken towards weight reduction, she only stated that she was currently waiting for an appointment at the obesity clinic.[96]

This court is simply not at liberty to reweigh the evidence or overrule the ALJ's decision as to credibility if his conclusion is supported by substantial evidence.  <u>See</u> <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001); <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991); <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1024 (5th Cir. 1990).  Although it is quite possible that Plaintiff's ability to lose weight may be limited by her experiencing some pain during exercise,[97] the record does not show that she attempted to follow her physician's instructions.  Finding that the ALJ's evaluation of Plaintiff's credibility is supported by substantial evidence, the court must defer to the his assessment.  <u>See</u> <u>Villa</u>, 895 F.2d at 1024.

---

[95]    Tr. 489.

[96]    Tr. 534.

[97]    Tr. 125.

### C.  Defendant's Motion for Summary Judgement

Defendant asserts in his motion that the ALJ's decision should be affirmed because it properly determined Plaintiff was never under a disability.  Finding no legal error in the ALJ's decision, the court should not disturb it if substantial record evidence supports the Commissioner's finding that Plaintiff is not disabled.

The medical evidence supports the conclusion that Plaintiff was capable of performing a range of medium work prior to January 2006.  She had no manipulative, communicative, or postural limitations.[98]  She could occasionally lift and carry fifty pounds, could frequently lift and carry twenty-five pounds, could be on her feet or sit for about six hours in a normal eight-hour day, and could push and pull in an unlimited manner.[99]  The record reflects that Plaintiff's daily activities included occasionally driving, spreading her faith door-to-door within her community, pushing the cart while grocery shopping, and going to church.[100]  Even though she experienced chest pains, headaches, hypertension, and fatigue, she remained able to steadily walk short distances.[101]  Based on the

---

[98]    See Tr. 195.

[99]    See Tr. 195.

[100]    See Tr. 528.

[101]    See Tr. 180, 385.

VE's testimony at the ALJ hearing, her limitations did not preclude employment.[102]

The court recognizes the seriousness of Plaintiff's medical condition and appreciates the difficulties Plaintiff has encountered with her medical conditions. However, the court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla of evidence. See Carey, 230 F.3d at 135. Here, the court finds more than a scintilla of evidence in support of the ALJ's decision. Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes. See Chambliss, 269 F.3d at 522; Carrier, 944 F.2d at 247; Villa, 895 F.2d at 1024. Although it is quite possible that Plaintiff's ability to do some types of work may be limited by her experiencing some pain, the inability to work without some pain will not in and of itself render her disabled. See Chambliss, 269 F.3d at 522; Richardson v. Bowen, 807 F.2d 444, 448 (5th Cir. 1987). Finding that the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial record evidence, the court must defer to the ALJ's assessment. See Villa, 895 F.2d at 1024.

The court, therefore, finds that the ALJ's decision is supported by substantial evidence. The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating

---

[102]   See Tr. 544-45.

the evidence and in making its determination.   Accordingly, the court must grant Defendant's motion for summary judgment.

### IV.   Conclusion

Based on the foregoing, the court **GRANTS** Defendant's motion for summary judgment.

**SIGNED** at Houston, Texas, this 13th day of June, 2007.

Nancy K. Johnson
United States Magistrate Judge